UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| TELIC INTERNATIONAL LLC, a Nevada limited liability company, and NOVASCARPA GROUP LLC, a Nevada limited liability company d/b/a TELIC USA,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>OKABASHI BRANDS INC., a Delaware corporation,<br><br>　　　　　　Defendant. | Case No. 1:16-cv-00063-EJL<br><br>MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

Before the Court in the above entitled matter is Defendant Okabashi Brands, Inc.'s Motion to File Publicly. (Dkt. 30.) The parties have filed responsive briefing and the matter is ripe for this Court's review. (Dkt. 39, 40.) Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this Motion shall be decided on the record before this Court without oral argument.

**DISCUSSION**

**1.      Standard for Filing Documents Under Seal**

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 & n. 7 (1978)). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Id.* (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). The presumption of access is "based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (citations omitted).

Two standards govern motions to seal portions of documents: a "compelling reasons" standard, which applies to dispositive motions, and a "good cause" standard, which applies to non-dispositive discovery type motions. *Kamakana*, 447 F.3d at 1179; *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010). The "'compelling reasons' standard applies to most judicial records." *Pintos*, 605 F.3d at 677-78. To satisfy that standard, the party seeking to seal "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178-79 (internal citations and quotations omitted). The

court then must balance the public's interest in access against the proffered reasons. *Id.* If the court agrees that the party's compelling reasons outweigh the public's right to access, it must "articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (citation omitted). Compelling reasons exist where the judicial record itself may become "a vehicle for improper purposes." *Id.* at 1179 (quoting *Nixon*, 435 U.S. at 598) (Examples of improper purposes include "the use of records to gratify public spite, promote public scandal, circulate libelous statements, or release trade secrets.").

Records attached to non-dispositive motions, however, are not subject to the strong presumption of access. *Kamakana*, 447 F.3d at 1179; *see also Pintos*, 605 F.3d at 678-79. Because the documents attached to non-dispositive motions "are often unrelated, or only tangentially related, to the underlying cause of action," a party moving to seal need only meet the lower "good cause" standard of Federal Rule of Civil Procedure 26(c). *Id.* (internal quotations omitted). The relevant standard for purposes of Rule 26(c) is whether "'good cause' exists to protect th[e] information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Pintos*, 605 F.3d at 678 (citation omitted). Motions that are technically nondispositive, however, may still require the party to meet the "compelling reasons" standard when the motion is more than tangentially related to the merits of the case. *See Ctr. for Auto Safety*, 809 F.3d at 1101.

Plaintiffs Telic International LLC and Novascarpa Group LLC (collectively "Telic") previously filed a Motion to Seal in conjunction with its Motion for Preliminary Injunction

and Temporary Restraining Order. (Dkt. 8, 13.)[1] The Court issued an Order granting the Motion finding good cause had been shown. (Dkt. 14.) Defendant Okabashi Brands, Inc. ("Okabashi") filed its response to the Motion for Preliminary Injunction under seal consistent with this Court's prior Order granting Telic's Motion to Seal. (Dkt. 29.) Because its response does not contain confidential or proprietary information, Okabashi has now filed the instant Motion asking for the Court to unseal certain filings including its response brief. (Dkt. 30.) Telic maintains the Court correctly applied the "good cause" standard in this case because the sealed filings related to a non-dispositive motion. (Dkt. 39.) Okabashi counters that the "compelling reasons" standard for sealing should apply because the filings go to the underlying merits of the case. (Dkt. 40.)

While the Motion for Temporary Restraining Order and Preliminary Injunction filed by Telic in this case was technically nondispositive, this Court finds it is more than tangentially related to the underlying cause of action. The Motion itself sought to prevent Okabashi from selling its inventory of Telic products. (Dkt. 7, 9.) Okabashi argues it has a right to sell the inventory under the terms of the parties' contract. (Dkt. 29.) Telic disputes whether the contract Okabashi relies upon ever took effect and, further, has raised claims that Okabashi breached the contract, in part, by producing inferior quality products which it now intends to sell threatening Telic's brand. (Dkt. 35, 36.) Because these arguments and claims

---

[1] Telic specifically requested that the Court seal its Memorandum in Support of the Motion (Dkt. 9-1), Affidavit of Rocco Azzarito (Dkt. 9-2), and Memorandum in Support of Motion to Seal (Dkt. 8-1). (Dkt. 13.)

4

go to the merits of the underlying cause of action, the Court finds that the compelling reasons standard applies in this case.

**2.      Application of the Compelling Reason Standard**

Under the compelling reasons standard, the party seeking to seal "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178-79 (internal citations and quotations omitted). "'Compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id*. Or where court files may serve "as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598-99. However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179-80 (citing *Foltz*, 331 F.3d at 1136). The compelling reasons standard is invoked even if the "motion, or its attachments, were previously filed under seal or protective order." *Id.* Under this stringent standard, a court may seal records only when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. for Auto Safety*, 809 F.3d at 1101. The court must then "conscientiously balance[ ] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* (citations omitted).

In this case, Telic maintains the materials filed in regards to the Motion for Temporary Restraining Order and Preliminary Injunction are properly sealed as they contain information regarding Telic's footwear prices, pricing strategy, marketing plans and strategy, coordination of these strategies with trademarks and trade secrets, costs of goods, mark-up, and existing inventory of Telic footwear on hand. (Dkt. 9-2, Aff. Azzarito at 12, ¶ 41.) Telic points to the parties' Mutual Confidentiality Agreement ("MCA") and protection of Telic's trademarks and trade secrets. (Dkt. 39 at 5.) Telic further argues Okabashi's "threat" to "kill" Telic's brand by selling off its inventory satisfies the compelling reasons test as it shows Okabashi's motive for requesting to unseal the materials is so they can be used as a vehicle for improper purpose. (Dkt. 39 at 5.) Okabashi counters that Telic has failed to show compelling reasons for sealing the materials as it has not shown the materials contain confidential matters. (Dkt. 40.)

While the sealed materials filed in this case delve into the financial dealings between the parties, they do not appear to contain any confidential or proprietary information that must be sealed. The trademarks and brand identification contained in the materials are all known to the public and have been properly filed unsealed. Telic argues as much in stating that it has worked hard to establish its brand and trademarks that are "prominently displayed on every Telic footwear product in Okabashi's possession." (Dkt. 39 at 5.) As to the materials containing details of the parties' dispute over quantity/quality shortcomings, production costs, and debts owed, the Court finds Telic has not established compelling reasons for sealing those materials. While there are certainly business reasons for not wanting

this information to be made public, Telic has not shown compelling reasons that overcome the presumption of access as to why those materials must be sealed in this case. The information directly relates to the substance of the dispute between the parties and will be relevant to the resolution of the claims in this case and the public's understanding of the Court's decisions.

Telic's argument to seal its materials appears to be centered around the "threat" it alleges Okabashi made to "kill" Telic's brand. (Dkt. 39 at 5.) Telic contends Okabashi's "threat" evidences Okabashi's intention to sell off the footwear for an improper purpose, i.e., not to recover its costs but to harm Telic's brand. In reviewing the parties positions and the sealed materials, the Court finds the alleged "threat" does not present compelling reasons to seal the materials. The circumstances surrounding the parties dealings, and in particular the alleged "threat" itself, appear to show very sharp dealings between the parties in this case. (Dkt. 9-2, Aff. Azzarito at ¶ 8) (Dkt. 9-14, Ex. L) (Dkt. 36-1, 2nd Aff. Azzarito.) However, those dealings do not, at this time, appear to rise to the level of an "improper purpose" at least as to the determination of whether a compelling reason has been shown to seal the materials. The fact that Okabashi has stated its intention to sell off the inventory of Telic branded footwear in its possession, as Okabashi believes it has a contractual right to do, does not also mean that the disclosure of the facts surrounding the parties' dealings is for an improper purpose. The Court makes no other determination at this time concerning the alleged threat. With these general conclusions in mind, the Court finds as follows as to the specific filings made in this case.

### A. Okabashi's Sealed Materials

Okabashi's response brief and supporting materials (Dkt. 29) shall be unsealed. These filing contain information concerning the agreements between the parties including the amounts Okabashi claims Telic owes it, Okabashi's interpretation of the terms of those agreements, quantity figures of Telic shoes produced by Okabashi, and similar content. The Court notes that none of these agreements appear to contain proprietary information. For these reasons, the Court finds that Telic has failed to show any compelling reason why these materials should be filed under seal.

### B. Telic's Sealed Materials

Telic's briefs filed in support of the Motion for TRO/PI shall also be unsealed. (Dkt. 9, 36.) Telic filed redacted and unredacted versions of both its initial brief in support of the Motion and its reply brief. (Dkt. 7, 9, 35, 36.) The Court has reviewed the unredacted and redacted versions of the briefs. Both unsealed briefs are heavily redacted generally leaving only the standard of law and a few facts unredacted. In comparing the two, the Court finds that Telic has failed to show compelling reasons for the redactions because the redacted material is directly related to the claims in this case and has not been shown to be proprietary. Further, the redactions are far too broad. For the reasons stated herein, the Court finds no compelling reason has been shown to seal the unredacted briefs and both briefs shall be unsealed. (Dkt. 9, 36.)

While some material relates to Telic's trademarks and brand identification, those matters are publicly known and the material does not itself reveal any trade secrets or

strategies. As to the information relating to the costs of goods, mark-up, and existing inventory, the Court does not find compelling reasons have been shown to prevent the disclosure of this information. The Court recognizes that this information could be useful to competitors, brokers, and retailers in the industry and it may have implications with consumers as well. *Nixon*, 435 U.S. at 598 (Where a court filing contains "business information that might harm a litigant's competitive standing," the court may properly deny public access.). These concerns, however, do not show a compelling reason to seal the information that outweighs the public's right of access, i.e. that disclosure would reveal proprietary or confidential information, not just embarrass Telic. *Kamakana*, 447 F.3d at 1180. The materials are directly related to the substance of the dispute in this case which Telic initiated when it filed the Complaint. Again, Telic "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Id.* at 1178-79 (internal citations and quotations omitted). The Court finds Telic has failed to make this showing here.

Attached to both of Telic's briefs are Affidavits of Rocco Azzarito and Exhibits. (Dkt. 7, 9, 35, 36.) Both Affidavits are heavily redacted. (Dkt. 7-2, 35-1.) The Court has reviewed the redacted and unredacted versions of the Azzarito Affidavits which offer statements in support of Telic's claims and identify the attached Exhibits. The Affidavits rely on the Exhibits to describe Telic's interactions with Okabashi concerning their dispute which has given rise to this case being filed. (Dkt. 7-2, 9-2, 35-1, 36-1.) Azzarito's Affidavits state Telic's position regarding the parties' contract dispute and details Telic's efforts to market

9

and protect its brand and trademarks. The details contained in Mr. Azzarito's Affidavits do not, however, reveal proprietary information and are directly related to the claims raised in this case. For these reasons, the Court finds no compelling reason has been shown to seal the Affidavits or the Exhibits attached thereto as stated below.

Exhibit A is a price sheet identifying five models of Telic shoes, their color selections, cost, and MSRP. (Dkt. 9-3, Ex. A.) The only potential confidential material in Exhibit A is the pricing information. Telic has not shown a compelling reason to seal this material as it is related to the dispute between the parties in this case. Exhibit A shall be unsealed.

Exhibit G is a copy of the Amended Financial Obligation Agreement ("AFOA") allegedly entered into between the parties. (Dkt. 9-9, Ex. G.) Exhibit H is a copy of a Financial Obligation Agreement allegedly entered into between the parties. (Dkt. 9-10, Ex. H.) Telic maintains neither of these agreements went into effect. Okabashi, on the other hand, argues both agreements are valid and enforceable. While these agreements list certain price, costs, and quantity figures, the Court does not find that they contain any proprietary information. Moreover, the documents are directly relevant to the parties' dispute. For these reasons, the Court finds Telic has failed to show a compelling reason for sealing these documents. Exhibits G and H shall be unsealed.

Exhibit I is a copy of the parties' February of 2012 Mutual Confidentiality Agreement. (Dkt. 9-11, Ex. I.) In this document each side agrees that any confidential information, as defined therein, that is disclosed by one party to the other shall remain confidential. This document does not itself contain any confidential or proprietary information and, therefore,

the Court finds no compelling reason has been shown for it to be filed under seal. Exhibit I shall be unsealed. That being said, nothing in this Order is intended to nor shall it be construed to release either of the parties from adhering to and complying with the terms of the Mutual Confidentiality Agreement. If any material subject to be unsealed in this Order contains confidential information subject to the Mutual Confidentiality Agreement, the parties are order to advise the Court immediately.

Exhibit J is a copy of an April 29, 2013 letter from Okabashi stating its estimated production costs and production capacity as well as general information about Okabashi's agreement with Telic. (Dkt. 9-12, Ex. J.) The letter also provides Okabashi's plans to increase its production capacity in 2013 and 2014. The information does not reveal proprietary information about Telic. Exhibit J will be unsealed.

Exhibit M is the Trigger Notice Okabashi sent to Telic on March 1, 2016. (Dkt. 36, Ex. M.) The Court has reviewed the notice and concludes that it is relevant to the substance of the parties dispute in this case and does not, on its face, appear to reveal proprietary information. Therefore, no compelling reason has been shown to seal the notice.

Exhibit N is an email from Mr. Azzarito to Okabashi's president describing the "production problem." (Dkt. 36-1, Sec. Aff. Azzarito at ¶ 12) (Dkt. 36-3.) Exhibit O is another email from Mr. Azzarito to Okabashi's president which Telic claims shows it had complained to Okabashi about production problems – poor quality, slow production, and inadequate quantities – which had caused Telic to cancel orders and lose customers and sales. (Dkt. 36-4, Ex. O.) Exhibits P and Q are additional emails going to the same topic, i.e., the

11

cost of slow production on Telic's sales. (Dkt. 36-5, Ex. P) (Dkt. 36-6, Ex. Q.) These emails all relate to Telic's arguments concerning the production problems it had with Okabashi and the parties' respective contractual rights and obligations. As such, these Exhibits are directly related to the claims in this case. The Exhibits do not, on their face, contain proprietary information. Therefore, no compelling reason has been shown to seal these exhibits.

Exhibit R is a chart Telic created that it argues reflects the defects with the footwear Okabashi shipped in late 2014 and early 2015 and the efforts to resolve the issues with the defects. (Dkt. 36-7, Ex. R.) Again, this Exhibit does not appear to contain proprietary information but it is directly related to Telic's arguments on the claims raised in this case. For these reasons, Exhibit R will be unsealed.

Exhibit S is a summary of what Telic paid Okabashi between February 25, 2015 and February 2, 2016. (Dkt. 36-8, Ex. S.) Telic contends the Exhibit shows its good faith effort to pay down its accounts receivable to Okabashi. This information goes to rebut Okabashi's arguments that Telic had failed to pay as required under the contract. Because the Exhibit does not contain proprietary information and is relevant to the claims in this case, it shall be unsealed.

Exhibit T is an email exchange between Okabashi and Telic which, Telic argues, memorialized the parties' agreement in principle as to the weekly quantity that Okabashi would produce. (Dkt. 36-1, Sec. Aff. Azzarito at ¶ 16) (Dkt. 36-9, Ex. T.) Though production, demand, and inventory are figures that could be used by competing companies

and/or industry participants, this Exhibit is allegedly direct proof of Telic's claim that the parties had agreed upon a minimum production requirement. Exhibit T shall be unsealed.

Exhibit U is a table of Telic's records listing the numbers of footwear, exclusive of the Dream type model, it received from Okabashi from May to September of 2015. (Dkt. 36-10, Ex. U.) The table includes number of footwear ordered, shipped, and produced as well as inventory on hand. These figures could potentially have value to competitors and other industry participants that may be detrimental to Telic's interests. The purpose of the table, however, goes directly to Telic's claim that Okabashi failed to produce the amount of footwear the parties had agreed upon under the AFOA. As such, the document relates to the claims made by the parties in this case and will be unsealed.

Telic's unsealed Answer to Okabashi's Counter Claims contains one redaction at Paragraph 8. (Dkt. 42 at¶ 8.) This redaction relates to Telic's denial of allegations relating to its willingness to pay Okabashi for certain pairs of footwear in Okabashi's inventory. Again, this paragraph relates directly to the claims raised in this case. No compelling reason has been shown to seal the same. Accordingly, Telic's unredacted Answer (Dkt. 43) shall be unsealed.

In an abundance of caution, the Court will delay execution of this Order to allow Telic an opportunity to show compelling reasons exist to seal particular materials that are currently filed underseal in this case. Telic has until April 25, 2016 to file a motion requesting that particular materials be sealed and Okabashi may respond to the same as directed below. Such

a showing must be specific as to the particular material to be sealed and the basis for doing so that is consistent with the reasoning articulated in this Order.

**3.     Future Sealed Filings**

As to future filings in this case that either side believes should be filed under seal, the Court instructs the parties as follows. First, the parties must advise the opposing side concerning the particular material they believe should be filed under seal. Next, the parties shall confer as to whether or not they agree that the material should be filed under seal. Thereafter, the party seeking to make the filing shall file a motion requesting that the material be filed under seal and/or redacted. Such filing shall be governed by the applicable Federal Rules of Civil Procedure and Local Civil Rules including, but not limited to, Rules 5.3 (sealing) and 5.5 (personal privacy). To the extent any of the materials contain private information, the parties are directed to ensure the documents comply with the Court's Local Civil Rule regarding the same. *See* Local Civ. R. 5.5. The motion to seal/redact shall state that the parties have conferred and the position of the opposing party. If a party plans to make a filing that includes material an opposing party has identified as confidential and potentially subject to sealing, the filing party shall provide the opposing party with sufficient notice in advance of filing to allow for the seeking of an order of sealing or redaction from the court.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the prior Order (Dkt. 14) is **WITHDRAWN** and the Defendant's Motion to File Publicly (Dkt. 30) is **GRANTED** as follows:

1. Defendant's brief in response to Plaintiffs' Motion for Preliminary Injunction and the supporting materials (Dkt. 29) shall be **UNSEALED**.

2. Plaintiffs' briefs and materials filed in support of the Motion for Preliminary Injunction (Dkt. 9, 36) are **UNSEALED**.

IT IS FURTHER ORDERED that Plaintiff shall review this Order and the materials to be unsealed and, if necessary, submit a motion to reconsider on or before April 25, 2016. Defendant may file a response to any such motion on or before April 28, 2016. Any reply brief shall be filed on or before April 29, 2016. Thereafter the Court will review any such motion and issue its decision.

IT IS FURTHER ORDERED that the Clerk of the Court shall delay execution of this Order until April 26, 2016. If Plaintiff files a motion to reconsider, the Clerk of the Court shall not execute this Order without further direction from this Court. If, however, no such motion is filed, the Clerk of the Court shall unseal the materials as stated in this Order forthwith on April 26, 2016.

IT IS FURTHER ORDERED that all future requests to seal or redact shall proceed as directed herein.

DATED: **April 20, 2016**

Honorable Edward J. Lodge
U. S. District Judge